IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA ADVOCACY OFFICE, INC.,<br>Plaintiff<br>v.<br><br>CLYDE L. REESE III, Esq., in his official<br>capacity as Commissioner of THE<br>GEORGIA DEPARTMENT OF<br>COMMUNITY HEALTH,<br>Defendant. | CIVIL ACTION<br>FILE NO. 1:15-CV-3372-AT |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION FOR ATTORNEYS' FEES AND EXPENSES

Having been unable to resolve by settlement prevailing party fees and expenses, Plaintiff hereby submits this brief (and supporting documentation) in support of the request for costs and attorneys' fees reasonably expended in obtaining a favorable resolution of this case. Defendant does not contest prevailing party status or customary hourly rates.

## STATEMENT OF THE CASE

Plaintiff GAO brought this case seeking declaratory and injunctive relief under 42 U.S.C. § 1983 for Defendant's violations of its rights to conduct

investigations and access records of individuals with disabilities pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001 *et seq.*; the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act, 42 U.S.C. §§ 10801 *et seq.*; and the Protection and Advocacy of Individual Rights ("PAIR") Program of the Rehabilitation Act, 29 U.S.C. § 794e.  [Doc. 1]. Plaintiff GAO initiated this action on September 24, 2015, after the Health Facility Regulation Division ("HFR") of the Georgia Department of Community Health denied Plaintiff's request for records relating to alleged incidents of abuse and neglect at skilled nursing facilities in the state.  [*Id.*]. Defendant filed a motion to dismiss, which was denied. [Doc. 12].

The parties agreed at a status conference to resolve this matter by Plaintiff filing a motion for summary judgment.  The parties filed a Stipulation of Facts [Doc. 16] to support the motion for summary judgment.  Plaintiff GAO's Motion for Summary Judgment and Injunctive Relief, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Injunctive Relief, and Proposed Order was filed on June 30, 2016.  [Doc. 17]. Defendant Reese filed his Response to Plaintiff's Motion for Summary Judgment and Injunctive Relief and Proposed Order on July 21, 2016.  [Doc. 20]. The Court granted the parties' Consent Motion for Extension of Time in Which to Reply to Defendant Reese's Response to

Plaintiff's Motion for Summary Judgment and Injunctive Relief and Proposed Order on July 29, 2016. [Doc. 22].

On August 17, 2016, Plaintiff filed its Reply to Defendant Reese's Response to Plaintiff's Motion for Summary Judgment and Injunctive Relief and Proposed Order. [Doc. 23].  On August 30, 2016, this Court issued an Order granting Plaintiff's Motion for Summary Judgment and Injunctive Relief. [Doc. 25].

On September 9, 2016, Plaintiff filed its Preliminary Fee Motion as prevailing party in the instant case. [Doc. 27].  Plaintiff filed its Consent Motion for Extension of Time for Plaintiff's Filing of Fee Application on September 29. [Doc. 28], which this Court granted on September 30, 2016. [Doc. 29]. Plaintiff's brief in support of its Motion for attorney fees follows herein. [Doc. 30].

## ARGUMENT AND CITATION OF AUTHORITY

The Supreme Court has explained that when a plaintiff succeeds in bringing a civil rights claim, "he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826 (2011) (2011) (internal quotation marks and citation omitted).  Prevailing parties in civil rights actions are entitled to an award of attorneys' fees. 42 U.S.C. § 1988; *see also Hensley v. Eckerhart*, 461 U.S. 424 (1983). "This statute is interpreted broadly since it is remedial in nature and facilitates private enforcement of civil rights."

*Webster Greenthumb Co. v. Fulton Cty.*, 112 F.2d 1339, 1346 (N.D. Ga. 2000);

*Lambreth v. Fulton Cty.*, 151 F.Supp2d 1364 (11ᵗʰ Cir. 2000); *see also*

*Wetherington v. Ameripass, Inc.*, 2013 WESTLAW 12097825, *10-13 (N.D. Ga.

March 27, 2013) (Totenberg, J.).

The Supreme Court clarified that "a 'prevailing party' is one who has been

awarded some relief by the court" and reiterated that "even an award for nominal

damages suffices" to establish prevailing party status.  *Buckhannon Bd. and Care*

*Home, Inc. v. West Virginia*, 532 U.S. 598, 603-604 (2001) (*citing Farrar v.*

*Hobby*, 506 U.S. 103, 113 (1992)); *see also Texas State Teachers Ass'n v. Garland*

*Independent School Dist.*, 489 U.S. 782 (1989) ("A prevailing party must be one

who has succeeded on any significant claim affording it some of the relief sought,

either *pendente lite* or at the conclusion of the litigation.").  Defendant does not

contest prevailing party status/entitlement to some fees and expenses.[1]

"Where a plaintiff has obtained excellent results, his attorney should recover

a fully compensatory fee." *Hensley*, 461 U.S. at 435; *Villano v. City of Boynton*

---

[1]    A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hopwood v. State of Texas*, 236 F.3d 256, 278 (5ᵗʰ Cir. 2000)(*citing Hensley*, 461 U.S. at 429). "[I]n the absence of special circumstances a district court not merely 'may' but must award fees to the prevailing plaintiff… ." *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271 (6ᵗʰ Cir. 1991)(*quoting Ind. Fed. of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989)).

*Beach*, 254 F. 3d 1302, 1308 (11th Cir. 2001) ("If the court determines that the result obtained was an excellent result, then the award of fees 'will encompass all hours reasonably expended on the litigation and indeed in some case of exceptional success an enhanced award may be justified.'"); *Association of Disabled Americans v. Neptune Designs, Inc.,* 469 F.3d 1357, 1359 (11th Cir. 2006).

Additionally, a court may apply "a common-sense comparison between relief sought and relief obtained ... to indicate whether a party has prevailed." *Institutionalized Juveniles v. Sec'y of Pub. Welfare,* 758 F.2d 897, 911 (3rd Cir. 1985) (*citing Bonnes v. Long,* 599 F.2d 1316, 1319 (4th Cir. 1979) (noting that a court should "look to the complaint to identify the conditions the suit sought to change, then use this as a benchmark to measure relief ultimately obtained").

As this Court is well aware, Plaintiff obtained the full measure of the relief sought at the outset of the litigation for each Plaintiff.  Plaintiff initiated this action to obtain records relating to alleged incidents of abuse and neglect at skilled nursing facilities in Georgia.  After denial of Defendant's motion to dismiss, the parties presented the matter for summary judgment, and this Court granted summary judgment to Plaintiff and found that the injunctive relief, detailed by Plaintiff and adopted by the Court, was "appropriate."  Order at 12 [Doc. 18].

I.   Determining the Lodestar

In determining an objective estimate of the value of a lawyer's services, this Court must multiply those hours reasonably expended by a reasonable hourly rate, or compute the "lodestar." *Hensley*, 461 U.S. at 433; *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "[T]he lodestar figure represents a presumptively reasonable fee." *Military Circle Pet Ctr. v. Cobb County*, 734 F.Supp. 502, 504 (N.D. Ga. 1990); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). Moreover, "[t]he Supreme Court has emphasized that the resulting figure is "more than a mere 'rough guess'" of the final award." *Halderman v. Pennhurst State School and Hosp.*, 725 F.Supp. 861, 863 (E.D.Pa. 1989) (*citing Delaware Valley I*, 478 U.S. at 564). Rather, it is "'*presumed* to be the reasonable fee' to which counsel is entitled." *Id.* (*quoting Blum,* 465 U.S. at 897) (emphasis in original).

A. REASONABLE HOURS.

In determining whether counsel expended a reasonable amount of time on the case, the Court looks first to the time claimed.

1. Time Expended.

Where "plaintiff's claims for relief ... involve a common core of facts or [are] based on related legal theories" the district court "should focus on the significance

of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 434. The hours claimed or spent on a case are "[t]he most useful starting point for determining the amount of a reasonable fee." *Hensley*, 461 U.S. at 433. Counsel must exercise "billing judgment" in determining the hours reasonably expended on the merits, *Id.* at 437, and attorneys should be compensated for the time reasonably expended in seeking an award of fees from the court. *Johnson v. Univ. Coll. of Univ. of Ala. Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983); *Johnson v. Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979).

Counsel's certification that the work itemized has in fact been performed is "entitled to considerable weight on the issue of time required ....". *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988). Indeed, this Circuit has stated that "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and, therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Perkins*, 847 F.2d at 738.

Plaintiff's counsel have stated in their affidavits that they maintained accurate and contemporaneous records of time spent and expenses incurred in this matter. Norris Decl ¶ 8; Weber Decl ¶ 4; Kegley Decl. ¶ 8; D'Ambroiso Decl. ¶ 9.

Counsel further declare that they have carefully reviewed their time sheets and exercised prudent billing judgment with regard to the billable time and out-of-pocket expenses claimed. *Id.* Counsel's hours represent a specific division of labor and were reduced for any time that could be construed as "excessive, redundant or inefficient." *Id.*; *see also In Re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993).

Plaintiffs have both documented time by task, and extensively reduced time. *Id.*; *see also* Fleming Decl., ¶ 23. It is also worth noting that much of this legal team has had the reasonableness of their time and expenses, as well as their demarcation of merits and fees litigation, addressed in previous orders in the Northern District of Georgia and quite recently in the Eleventh Circuit. *Moore v. Cook*, 2012 WESTLAW 5362892 (N.D. Ga. Oct. 31, 2012); *M.H. v. Commissioner of Georgia Dept. of Community Health*, No. 15:14227 (11th Cir. July 27, 2016) (Orders attached hereto). These decisions provide detailed review of both the reasonableness of time expended on the merits and the efficiency of adjudication of the prevailing party fee stage of litigation. Full hourly rates and nearly all requested time was awarded.

### 2. The Johnson Factors.

Although the Eleventh Circuit has followed Supreme Court precedent in

abandoning the test set forth in *Johnson* in favor of the lodestar formula, it is still useful to consider the twelve factors in calculating a reasonable fee. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Cain v. Alemco USA, Inc.*, 2014 WESTLAW 2158413 (N.D. Ga. May 23, 2014) (considering *Johnson* factors).

Four Johnson factors - the time and labor required, the novelty and difficulty of the case, the amount involved and the result obtained, and the skill of the attorneys requisite to perform the legal service properly - should be considered in assessing the reasonableness of the hours claimed. *See generally, Norman*, 836 F.2d at 1299-1302.

### a. Time and Labor Required.

In making a fee request, "[c]ounsel ... should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Norman*, 836 F.2d at 1301. Counsel should provide in the fee request the hours spent "with sufficient particularity." *ACLU v. Barnes*, 168 F.3d 423 (11th Cir. 1999). As previously noted, Plaintiffs' counsel have affirmed that they have carefully reviewed their time records and exercised prudent billing judgment with regard to the billable time and out-of-

pocket expenses claimed.  Fleming Decl. ¶ 23.

### b. Novelty and Difficulty of the Issues Presented.

In determining a reasonable attorney fee, this Court should consider the

novelty and difficulty of the questions presented in this case and the skill requisite

to perform the services properly. *See Blanchard v. Bergeron*, 489 U.S. 87, n. 5

(1989) (*citing Johnson,* 488 F.2d at 717-19).  This case factually simple, but the

legal issues were contested by the Defendant in a motion to dismiss and at

summary judgment.  Defendant's actions, as well as the complexities of the

constitutional and statutory issues presented, created a novel case.

### c. The Amount Involved and the Results Obtained.

As the Eleventh Circuit explained, where all the theories of recovery arise

from a common core of facts, a district court should focus on "the significance of

the overall results as a function of total reasonable hours." *Norman,* 836 F.2d at

1302.  The public benefit advanced by civil rights litigation is far more important

than the amount of money received. *City of Riverside v. Rivera*, 477 U.S. 561, 574

(1989) ("Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate

important civil and constitutional rights that cannot be valued solely in monetary

terms.").  Attorney fees analysis should "encompass not only a comparison of the

relief requested to that recovered, but also a determination of whether public interests have been served by resolution of the dispute." *Walker v. Crigler,* 145 F.3d 1327(4th Cir. 1998) (unpublished opinion) (*citing Sheppard v. Riverview Nursing Center, Inc.,* 88 F.3d 1332, 1336 (4th Cir. 1996)); *see also Webster Greenthumb Co.*, 112 F.Supp. 2d at 1376-789 ("the most important factor is the results obtained" and enhancement may be appropriate for public advancement "spillover benefits for non-parties"); *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223 (10th Cir. 2001) (attorney fees to civil rights claimant to be construed broadly to allow recovery when attorneys are encouraged to represent civil rights clients, important right is affirmed, or need to improve or change conduct is established).

Despite Defendant's tactics, at the end of the day the results achieved for Plaintiff included *all* of the relief sought at the outset of the case. *See Koster v. Perales*, 903 F.2d 131, 135 (2nd Cir. 1990) (where full measure of attorney fees' were awarded, although settlement agreement required defendant to do no more than he was obligated to do by law before litigation began, because "[p]laintiffs ... obtained the relief contemplated at the outset of the litigation."); *see also Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces... ."); *see also Hensley* 461 U.S. at 435 ("[T]he court's rejection of *or*

-11-

*failure to reach certain grounds* is not a sufficient reason for reducing a fee. The result is what matters.") (emphasis added); *Webster Greenthumb*, 112 F.Supp. 2d at 1346, 1351-52 ("one need not succeed on all claims" and those arising from a "common core of facts" are compensable even if not successful); *Brooks v. Georgia State Bd. of Elections*, 997 F.2d 857, 861 (11th Cir. 1993) ("compensable time for purposes of these fee statutes is that time spent *'on the litigation.'*") (emphasis in original).

Indeed, the Supreme Court has held that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; *see also Brooks*, 997 F.2d at 868 ("This principle is no less applicable where the plaintiff did not receive all the relief requested.") (*citing* and *quoting Hensley*, 461 U.S. at 435-36 n. 11).

The results obtained in this case were excellent. Plaintiff should receive the full amount of attorney's fees requested for successfully prevailing in this case.

### d. Skill and Expertise of the Attorneys.

Detailed information regarding the skill and expertise of the Plaintiff's counsel is contained in the Declarations of Counsel, their expert, and in the

discussion of reasonable hourly rate. Norris Decl ¶¶ 2-6; Weber Decl ¶¶ 2-3;

Kegley Decl. ¶¶ 1-7; D'Ambrosio Decl. ¶ 8.  Plaintiff's legal team included counsel

with much disability and constitutional tort litigation experience.  The experience

and specialized expertise of counsel enabled Plaintiff to pursue this case

successfully and efficiently.

> e.    The Court May Consider Defendant's Actions in Exacerbating the
>        Costs of Litigation.

Plaintiffs received the injunction they sought only after overcoming both a

motions to dismiss and summary judgment.  The Court is entitled to consider

Defendant's tactics and delays in determining the amount of attorney fees. [2] *See*

*City of Riverside v. Rivera,* 477 U.S. 561, 580 n. 11 (1986) (stating that a defendant

"cannot litigate tenaciously and then be heard to complain about the time

necessarily spent by plaintiff in response"); *Connolly v. National School Bus*

*Service, Inc.,* 177 F.3d 593, 598 (7th Cir. 1999) (upholding an attorney fee

reduction to plaintiff because "[counsel's] dilatory litigation tactics had unduly

prolonged the litigation.");  *Shipes v. Trinity Indus.,* 987 F.2d 311, 321 (5th

---

[2] The Supreme Court has approved the practice of adjusting fee awards to account
for delay. *See Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989); *Pennsylvania v.*
*Delaware Valley Citizens' Council for Clean Air (Delaware Valley II),* 483 U.S.
711, 716 (1987) ("[D]elay constitutes an appropriate reason for enhancing the
lodestar").  "This is a matter within the district court's discretion." *SPIRG of New*
*Jersey v. AT & T Bell Laboratories*, 842 F.2d 1436, 1453 (3rd Cir. 1988).

Cir.1993) (stating that "obstinate conduct by opposing counsel is compensated by the additional number of hours required to prevail over such obstinancy"); *Powell v. U.S. Dept. of Justice*, 569 F. Supp. 1192 (D.C.Cal.1983) (awarding interim fees to plaintiff based, in part, on the fact that "the government has engaged in inordinate delay" and the fact that "this litigation has been pending for over a year and a half and is likely to continue for a substantial period of time."); *Marbled Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308, 326 (N.D.Cal.1995) (stating that defendant's counsel "may have the right to play 'hardball' when defending its client's interests, but it should bear the costs associated with pursuing this type of obstructionist strategy").

## B. REASONABLE HOURLY RATE.

In assessing a reasonable hourly rate for Plaintiff's counsel, this Court must evaluate the attorneys' "knowledge of trial practice and knowledge of the substantive law." *Norman*, 836 F.2d at 1301. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id*. at 1299. In short, the rate should "reflect what an attorney with similar experience, background, skill, and reputation would charge under the same circumstances." *In re Chicken Antitrust Litig.*, 560 F.Supp. at 971; *In re Domestic Air Transp. Litig.*,

148 F.R.D. at 355; *Pub. Interest Group of N. J., Inc. v. Windall*, 51 F.3d 1179, 1185

(3rd Cir. 1995).  The market rate applies whether the attorney is in public interest or

private practice.  *Mason v. Pierce*, 806 F.2d 1556, 1557-58 (11th Cir. 1987).

Defendant does not dispute the customary hourly rates.  Indeed, three of the

counsel herein were awarded their full hourly rates in *Moore v. Cook*, 2012

WESTLAW 5362892 (N.D. Ga. Oct. 31, 2012) and *M.H. v. Commissioner of*

*Georgia Dept. of Community Health*, No. 15:14227 (11th Cir. July 27, 2016).[3]

1.  Johnson Factors Relevant to Hourly Rate.

As noted above, a review of the factors delineated in *Johnson* is still deemed

useful in calculation of a reasonable fee.  *Norman*, 836 F.2d at 1299.  "[T]he

district court may wish to consider any of the Johnson factors to the extent that they

suggest that comparables offered may not be relevant to the issues before the court

or as they may affect the weight to be given to the comparables being offered the

court." *Id.* at 1299-1300.  The factors which are most relevant to the reasonableness

---

[3]     Defendant has suggested that Counsel Weber's hourly rate is too high for
compiling a fee application, despite the fact that his doing so has recently been
approved and his hourly rates and hours awarded at 100% in two district court and
one Eleventh Circuit decisions involving the same defendant.  Moreover, Counsel
Weber has received full fee awards at full hourly rates in other cases where his sole
role was focused on prevailing party fees and expenses.  His hourly rate is offset by
the efficiency with which he performs the fee application tasks, as repeatedly
affirmed by decisions of this Court and the Eleventh Circuit when he addressed the
same fee application task.  Weber Decl ¶ 3.

of a requested hourly rate in this case are discussed below.

      a.  <u>The Customary Fee</u>.

    There is no doubt that the prevailing attorneys' own customary or usual billing rates are an "appropriate factor to be considered by the court." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This Court has described the customary fee as the "best evidence" of hourly rate. *Webster Greenthumb*, 112 F.Supp.2d at 1368. Defendant does not contest customary hourly rates.[4]

      b.  <u>Experience, Reputation, and Ability of Attorneys</u>.

    The experience, reputation and ability of counsel are set forth in the attached Declarations, and weigh heavily in favor of their offered hourly rates.

      c.  <u>The Nature and Length of the Professional Relationship with the Client</u>.

    The Fifth Circuit has stated that a lawyer "may vary his fee for similar work in the light of the professional relationship of the client with his office." *Johnson*, 488 F.2d at 719. This factor does not apply to this case in such a way as to suggest reduction of the fees for which Plaintiffs apply.

    This factor may, however, be relevant to any comparison between the hourly

---

[4] In this case, the relevant legal community is the Northern District. *Carey v. Rudeseal*, 721 F.Supp. 294, 298 n. 5 (N.D. Ga. 1989) ("'relevant community' for purposes of this fee petition is the Northern District of Georgia"); *Knight v. Alabama*, 824 F.Supp. 1026, 1027 n.1 (N.D. Ala. 1993) ("relevant legal community is the area where the court sits").

rates charged by Plaintiff's counsel and those charged by defense counsel in this or similar cases.  As the *Norman* court recognized, "it is not unusual for a law firm representing a governmental entity on an ongoing basis to charge substantially lower hourly rates than would be charged for representation in a single case. Where the facts show this, the fee charged by a government attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer." *Norman*, 836 F.2d at 1300; *Brooks*, 997 F.2d 857 ("the hourly rate at which opposing counsel was paid is of little or no relevance").

In sum, rates are reasonable.

C. <u>REASONABLE EXPENSES</u>.

Plaintiff also seeks an award of expenses – their filing fee.   They do not seek any other compensable expenses. *Loranger v. Stierheim*, 3 F.3d 356, 363 (11th Cir. 1993), *vacated on other grounds*, 10 F.3d 776 (11th Cir. 1994); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988."); *Ryder Truck Lines, Inc. v. Goren Equip. Co.*, 576 F.Supp. 1348 (N.D. Ga. 1983).  Plaintiffs' expenses should be approved.

## **CONCLUSION**

For the reasons set forth herein, and upon the record in the case, Plaintiff

submits that this request for reasonable attorneys' fees and expenses be granted.

The amounts of fees and expenses sought are summarized on Exhibit A attached.

DATED:    This the 24th day of October, 2016.[5]

/s/ Julie C. Kegley
Julie C. Kegley
(Georgia Bar No. 255840)

Georgia Advocacy Office
One West Court Square, Suite 625
Decatur, Georgia 30030
Telephone: (404) 885-1234
Facsimile: (404) 378-0031
Email: jkegley@thegao.org

/s Gerald Weber
Gerald Weber
(Georgia Bar No. 744878)

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107-0391
(404) 522-0507
wgerryweber@gmail.com

---

[5] Counsel certifies that this brief was prepared using Times New Roman pt 14, a font and type approved by the Northern District of Georgia.

**EXHIBIT A**

**SUMMARY
ATTORNEY HOURS AND
EXPENSES**

Re: *GAO v. REESE,* 1:15-CV-3372-AT

| Attorney | Reduced Hours | Rate | Total |
|---|---|---|---|
| Joshua Norris | 66.25 | $400.00 | $ 26,500.00 |
| Gerry Weber | 15.50 | $520.00 | $  8,060.00 |
| Katherine D'Ambrosio | 15.50 | $200.00 | $  3,100.00 |
| Julie Kegley | 17.50 | $340.00 | $  5,950.00 |
| Attorney Subtotal | | | $ 43,610.00 |

**Reasonable Expenses:**

| | | |
|---|---|---|
| Filing Fee | | $400.00 |
| **Total** | | **$44,010.00** |

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2016, I electronically filed the

foregoing PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS'

FEES AND EXPENSES and its attachments with the Clerk of Court using the

CM/ECF system which will automatically send e-mail notification of such filing to

all attorneys of record:

DATED: This 24th day of October, 2016.

/s Julie Kegley
Julie Kegley

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANNA C. MOORE
a minor child, by and through her
mother and natural guardian Pamela
Moore,

    Plaintiff,

      v.

DAVID A. COOK
in his official capacity as
Commissioner of the Department of
Community Health,

    Defendant.

CIVIL ACTION FILE
NO. 1:07-CV-631-TWT

## ORDER

    This is an action against David A. Cook, in his official capacity as
Commissioner of the Georgia Department of Community Health, for violating the
Medicaid Act. It is before the Court on the Plaintiff's Motion for Attorneys' Fees and
Expenses [Doc. 240]. For the reasons set forth below, the Court GRANTS the
motion. The Clerk is directed to enter a supplemental judgment in favor of the
Plaintiff against the Defendant in the amount of $592,148.31 and for post judgment
interest at the legal rate from April 20, 2012.

## I. Background

The Plaintiff Anna C. Moore is a seventeen year old Medicaid beneficiary living in her family's home in Danielsville, Georgia. Due to a stroke she experienced in utero, the Plaintiff is severely disabled and suffers from a host of chronic conditions, including spastic quadriplegic cerebral palsy, refractory seizure disorder, mental retardation, gastroesophageal reflux disease, cortical blindness, dysphagia, bone cartilage disease, scoliosis, kyphosis, and restrictive lung disease. (Compl. ¶ 8.) In summary, she "has severe physical disabilities including spinal deformities in two directions, she is blind and non-verbal, she has seizures that are difficult to control with multiple medications, she has difficulty swallowing even her own saliva, she has difficulties with breathing consistently, she is cognitively impaired, and she has a host of other physical manifestations and medical complications as a result of the damage in her brain." (Id., ¶ 9.) She requires around the clock monitoring, care and treatment.

Since 1998, when she was three years old, the Plaintiff has received Medicaid-funded nursing services from Georgia's Department of Community Health ("the Department") and its predecessor agencies. Under the Medicaid Act, a participating state is required to provide certain categories of care to eligible children, including early and periodic screening, diagnostic and treatment services ("EPSDT"). In

Georgia, a child who is enrolled as a member of the Georgia Pediatric Program[1] is eligible to receive private duty nursing services.[2] While the Plaintiff has been enrolled in the Georgia Pediatric Program, the Department has approved her to receive private duty nursing services in her home. On November 15, 2006, the Department notified the Plaintiff that her hours of approved skilled nursing services were being reduced from 94 to 84 hours per week effective December 7, 2006. Through her mother, she immediately appealed this reduction, and a hearing was scheduled. The day before the hearing, however, she withdrew her request and filed this section 1983 action, seeking declaratory and injunctive relief against the Department. She claims that the Department's policies conflict with the EPSDT provisions in the Medicaid Act and violate the Constitution. This Court granted partial summary judgment to Moore, and the United States Court of Appeals for the Eleventh Circuit reversed the decision and remanded the case. This Court granted summary judgment to Moore a second time, and the United States Court of Appeals for the Eleventh Circuit reversed the decision

---

[1]This is a Georgia Medicaid program that provides continuous skilled nursing care to medically fragile children.

[2]Private duty nursing service is defined as "nursing services for recipients who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility." 42 C.F.R. § 440.80. These services are provided by a registered nurse or nurse practitioner under the direction of the recipient's physician at either the recipient's home, a hospital, or a skilled nursing facility. Id.

and remanded the case again.  This Court then held a trial after which it entered a declaratory judgment in favor of the Plaintiff, stating that the reduction of her skilled nursing hours from 94 per week to 84 per week was a violation of the Medicaid Act enforceable under 42 U.S.C. § 1983, and denied the Plaintiff's request for injunctive relief as moot [Doc. 239].   On July 13, 2012, the Plaintiff filed this Motion for Attorneys' Fees and Expenses [Doc. 240].

## II. Discussion

42 U.S.C. § 1988 provides that "[i]n any action or proceeding to enforce a provision of section[]...1983..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs..." 42 U.S.C. § 1988(b).  Like other fee shifting statutes, the statute is interpreted broadly because it is remedial in nature and facilitates private enforcement of civil rights. Williams v. City of Fairburn, Ga., 702 F.2d 973, 976 (11th Cir. 1983).  Although awarding attorney's fees is within the discretion of the trial court, such discretion is a narrow one in that attorney's fees should be denied only when special circumstances would render an award unjust, Solomon v. City of Gainesville, 796 F.2d 1464, 1466 (11th Cir. 1986), or the statute is being subverted into a ruse for providing "windfalls" to attorneys.  Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1192 (11th Cir. 1983).  Importantly, one need not succeed on all claims in order to obtain attorney's

fees. <u>Solomon</u>, 796 F.2d at 1466-67.

A.    <u>Prevailing Party</u>

A party is not a prevailing party if it only "conceivably could benefit" from the

court's judgment. <u>Barnes v. Broward County Sheriff's Office</u>, 190 F.3d 1274, 1278

(11th Cir. 1999). There must exist evidence that the court's judgment "materially

alters the legal relationship between the parties by modifying the defendant's behavior

in a way that directly benefits the plaintiff." <u>Farrar v. Hobby</u>, 506 U.S. 103, 111-112

(1992). Thus, a party that succeeds on the merits nonetheless is not a prevailing party

for the purpose of attorney's fees if it does not directly benefit from the court's order

at the time it is rendered. <u>See</u> <u>Hewitt v. Helms</u>, 482 U.S. 755, 763-64 (1987) (noting

that plaintiff was not prevailing party because he did not directly benefit from final

judgment at the time it was entered). To be a prevailing party for purposes of

attorney's fees, the plaintiff "need only prevail on one significant issue." <u>Ruffin v.</u>

<u>Great Dane Trailers</u>, 969 F.2d 989, 992-93 (11th Cir. 1992). The Plaintiff is the

prevailing party in this action. As a result of the litigation, her nursing hours were

maintained at 94 hours per week over the course of five and one half years of

litigation. She succeeded when the Court entered a declaratory judgment that the

reduction of her skilled nursing hours from 94 to 84 per week was a violation of the

Medicaid Act. This was a significant issue–it was the primary basis for the Plaintiff's

suit. (See Compl.) Therefore, with this threshold met, the Court now turns to the task of calculating a reasonable attorney's fees award.

B.    The Lodestar Amount

The Plaintiff seeks a total attorney's fee award of $602,348.31, which consists of $591,591.50 for attorney's fees and $10,756.81 in expenses. This represents a reduction of $14,952.50 in fees and $1,293.26 in expenses in response to the Defendant's objections. The Defendant opposes the motion. The Defendant argues that this Court should reduce the Plaintiff's request for attorney's fees on several grounds, which are discussed below.

In Hensley v. Eckerhart, 461 U.S. 424, 433-37 (1983), and Blum v. Stenson, 465 U.S. 886, 896-97 (1984), the Supreme Court established the framework and methodology for calculating the amount of a reasonable attorney's fee award. The starting point for calculating reasonable attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorney's services. Hensley, 461 U.S. at 433; Blum, 465 U.S. at 897; accord ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). This produces the "lodestar" amount. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 563 (1986). After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the

necessity for an adjustment based upon the results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988).

The fee applicant is the party that "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Id. at 1303; ACLU v. Barnes, 168 F.3d at 427; accord Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc., 207 F.3d 1247, 1252 (11th Cir. 2000).

> That burden includes supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

ACLU v. Barnes, 168 F.3d at 427 (quotation marks and citations omitted). These obligations of the fee applicant are especially important in cases where the applicant has only partially succeeded in the suit. Hensley, 461 U.S. at 437.

Similarly, a party opposing a fee application also has obligations. Its objections and proof must be specific and "reasonably precise." Id. at 428. When the parties fulfill their obligations, this assists the court in fulfilling its duty to render an

order that articulates both its decisions and reasons for the decisions, thus allowing for meaningful appellate review.  Id. at 428-29; see also Coastal Fuels, 207 F.3d at 1252 ("[W]e have said that a court's order on attorney's fees must allow meaningful appellate review."); NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1335 (11th Cir. 1987) ("A prerequisite for our review of an attorney's fee award is that the district court's opinion must have explained the reasons for the award with 'sufficient clarity to enable an appellate court to intelligently review the award.'").

### 1.   Reasonable Hourly Rate

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate."  Norman, 836 F.2d at 1299.  Reasonable hourly rates are to be measured by the "prevailing market rates in the relevant community."  Blum v. Stenson, 465 U.S. 886, 895 (1984).  Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  Id. at 895 & n.11; ACLU v. Barnes, 168 F.3d at 436. The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive.  Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000) ("What [the attorney] charges clients is powerful, and perhaps the best, evidence of

his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'"); see also National Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("The best evidence would be the hourly rate customarily charged by the affiant himself or by his law firm."). A fee applicant also may provide opinion evidence of reasonable rates, which is commonly done by submitting affidavits of other attorneys in the relevant legal community. Duckworth v. Whisenant, 97 F.3d 1393, 1396-97 (11th Cir. 1996). Finally, the court may utilize its own personal experiences and expertise to assess the lawyering skills exhibited during the pendency of the case. Id. at 1397 ("This court has also been given ample opportunity to assess the lawyering of this case for the Plaintiff."). But the court cannot simply substitute its own judgment for uncontradicted evidence without an explanation and record support. NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1334-36 (11th Cir. 1987).

The Plaintiff's counsel are Joshua Norris and Paula Miller of the Georgia Advocacy Office, and Gerald Weber. They have submitted affidavits to support the hourly rates claimed in the motion as commensurate with counsel's billing rates for similar cases. (Fleming Decl. ¶ 20; Miller Decl. ¶ 6; Weber Decl. ¶ 3.) They have also submitted the affidavit of an experienced attorney in Atlanta, who has testified that the hourly rates are reasonable. (Fleming Decl. ¶ 20.) The Plaintiff's counsel

request an hourly rate of $400 for Paula Miller, $290 and $330 for Joshua Norris, and

$475 for Gerald Weber. The Defendant argues that it is unreasonable for Paula Miller

to be given a higher rater than her supervisor, Joshua Norris, who is the Director of

Legal Advocacy. (Def.'s Br. in Opp'n to Pl.'s Mot. for Attorneys' Fees, at 21.) The

Defendant requests that Paula Miller's rate be reduced to $330 per hour. (Id.) The

Court is not inclined to penalize the Plaintiff's counsel for requesting a lower hourly

rate for another lawyer by engaging in such a comparison.[3]   Judged on her own

experience, reputation, and ability, Paula Miller's requested hourly rate of $400 per

hour is reasonable. (Miller Decl. ¶¶ 2-5.) The Defendant offers no expert evidence to

support his claim that Ms. Miller's hourly rate is unreasonable.   The hourly rates

claimed in the motion are deemed reasonable.

   2.   Reasonable Hours

   "Fee applicants must exercise what the Supreme Court has termed 'billing

judgment.'" ACLU v. Barnes, 168 F.3d at 428.  This means that "[c]ounsel for the

prevailing party should make a good faith effort to exclude from a fee request hours

that are excessive, redundant, or otherwise unnecessary" because, for example, the

case is overstaffed. Hensley, 461 U.S. at 434. Work performed by multiple attorneys,

---

[3]If the Court were inclined to compare the relative experience of Paula Miller
and Joshua Norris, it would find that the former has been a lawyer for nine more years
than the latter.  (Miller Decl. ¶ 2; Norris Decl. ¶ 3.)

however, is not subject to reduction where the attorneys were not unreasonably doing the same work. Jones v. Central Soya Co., 748 F.2d 586, 594 (11th Cir. 1984); Johnson v. University College of University of Alabama, 706 F.2d 1205, 1208 (11th Cir. 1983).

As to the work performed, compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorney's fees. See City of Riverside v. Rivera, 477 U.S. 561, 573 n.6 (1986) (allowing compensation for productive attorney discussions and strategy conferences); Webb v. Board of Educ. of Dyer County, Tenn., 471 U.S. 234, 243 (1985) (allowing compensation for pre-litigation services in preparation of suit); Cruz v. Hauck, 762 F.2d 1230, 1233-34 (5th Cir. 1985) (allowing compensation for preparing and litigating fee request); Adams v. Mathis, 752 F.2d 553, 554 (11th Cir. 1985) (holding that measures to enforce judgment are compensable); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 & n.5 (2d Cir. 1983) (allowing compensation for background research and reading in complex cases); Brewster v. Dukakis, 544 F. Supp. 1069, 1079 (D. Mass. 1982) (compensating for

negotiation sessions), aff'd as modified, 786 F.2d 16, 21 (1st Cir. 1986). Reasonable

travel time of the prevailing party's attorneys ordinarily is compensated on an hourly

basis, although the rate may be reduced if no legal work was performed during travel.

Johnson, 706 F.2d at 1208. As with attorneys' work, the hours expended by

paralegals, law clerks, and other paraprofessionals are also compensable to the extent

these individuals are engaged in work traditionally performed by an attorney.

Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989); Jean v. Nelson, 863 F.2d

759, 778 (11th Cir. 1988). In short, "with the exception of routine office overhead

normally absorbed by the practicing attorney, all reasonable expenses incurred in case

preparation, during the course of litigation, or as an aspect of settlement of the case

may be taxed as costs under section 1988" and "the standard of reasonableness is to

be given a liberal interpretation." NAACP v. City of Evergreen, Ala., 812 F.2d 1332,

1337 (11th Cir. 1987) (quoting Dowdell v. City of Apopka, Florida, 698 F.2d 1181,

1192 (11th Cir. 1983)).

　　　The Eleventh Circuit has stated that its decisions regarding attorney's fees

"contemplate a task-by-task examination of the hours billed" and that applicants

should "show the time spent on the different claims." ACLU v. Barnes, 168 F.3d at

427, 429. The Eleventh Circuit has also stated that where a fee application and

supporting documents are voluminous, a district court is not required to engage in an

hour-by-hour analysis of the fee award. <u>Loranger v. Stierheim</u>, 10 F.3d 776, 783

(11th Cir. 1994). In such cases, it is sufficient for the district court to determine the

total number of hours devoted to the litigation and then reduce that figure by an

across-the-board percentage reduction if such a reduction is warranted. <u>Id.</u> The

Eleventh Circuit has even intimated that such a method may be the preferred course

with a voluminous fee request to avoid waste of judicial resources. <u>Id.</u> The Supreme

Court has also stated:

> The district court may attempt to identify specific hours that should be
> eliminated, or it may simply reduce the award to account for the limited
> success. The court necessarily has discretion in making this equitable
> judgment. This discretion, however, must be exercised in light of the
> considerations we have identified.

<u>Hensley</u>, 461 U.S. at 436-37; <u>accord</u> <u>Popham v. City of Kennesaw</u>, 820 F.2d 1570,

1579-81 (11th Cir. 1987) ("[T]he Supreme Court explicitly stated that a court could

simply reduce the award to account for the plaintiff's limited success instead of

eliminating hours specifically expended on unsuccessful claims.").

The supporting documentation filed by the Plaintiff's counsel is very detailed,

breaking down performed tasks into increments as small as fifteen minutes. The

Plaintiff provides several affidavits supporting its fee application, while the Defendant

provides only briefing in response.

The fee application and supporting documents are voluminous, with Miller

requesting 1096.7 hours, Norris requesting 481.55 hours, and Weber requesting 40.3

hours after self-imposed downward adjustments in response to the Defendant's

objections.  (Pl.'s Reply Br., at Ex. C.)  After reviewing the Plaintiff's counsel's

declarations and affidavits, and the briefs, the Court finds that the hours claimed by

the Plaintiff's counsel are mostly reasonable, and a substantial downward adjust is

unwarranted. The Court will address each area of contention and explain its reasoning

below:

a.    <u>Vague and Noncompensable Entries</u>

The Court finds that the Plaintiff's counsel's time sheets are detailed and

comprehensive.  There are some hours listed that are noncompensable, but these are

also very few, and the Plaintiff's counsel have agreed to reduce them.  These include

administrative functions such as copying Department documents, which the Plaintiff

agreed to eliminate.  (Miller Decl., Ex. B, at 24); (Pl.'s Reply Br., at 7.)  The hours

that the Plaintiff's counsel spent strategizing with outside counsel on relevant issues

are compensable.  See <u>Marisol A. ex rel. Forbes v. Giuliani</u>, 111 F. Supp. 2d 381, 392

(S.D.N.Y. 2000). However, 16.5 hours for "analysis of prior OSAH actions involving

Callie" by Ms. Miller are noncompensable and the fee request should be reduced by

$6,600.00.

b.    <u>Excessive Hours</u>

-14-

To enable the Court to calculate the lodestar, the movant must demonstrate not only that the claimed hours were actually expended, but also that the applicant has exercised "billing judgment" and made a good faith effort to exclude from a fee request any hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude such hours from his fee submission to his client. Hensley, 461 U.S. at 440. Thus, the Plaintiff's counsel were required to exclude those hours from their fee application "that would be unreasonable to bill a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301. When determining whether the Plaintiff's counsel claimed excessive hours, the Plaintiff's counsel's "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." Perkins v. Mobile Hous. Bd., 847 F.2d 735, 738 (11th Cir. 1988).

The Defendant has not shown that any of the Plaintiff's entries were obviously and convincingly excessive. The Defendant presents no affidavits to support his contention that various entries were excessive. The Defendant does point out two entries that on the surface appear excessive. First, the Plaintiff's counsel state that they spent 60.4 hours drafting the jointly-drafted pre-trial order. (Miller Decl., Ex. B,

at 6; Miller Decl., Ex. C, at 4-5.) Second, the Plaintiff's counsel also claim that they

spent 8.9 hours preparing for a thirty minute status conference. (Miller Decl., Ex. B,

at 2.) Yet, after reviewing the Plaintiff's explanation for these hours, the Court finds

that they are not obviously excessive. (Pl.'s Reply Br., at 10-11.) The claim for 9

hours for Ms. Miller to "meet Callie" is excessive and the fee request should be

reduced by $3,600.00.

c.    Complaint and Amended Complaint

The Plaintiff's counsel seek 62.5 hours associated with the initial pleadings, and

10.75 hours associated with drafting the Amended Complaint. The Court dismissed

the Supremacy Clause claim in the Complaint [Doc. 15]. Some claims in the

Amended Complaint were unsuccessful because the Plaintiff did not make a specific

request for relief [Doc. 132]. Yet, these claims involved "a common core of facts"

and "[m]uch of counsel's time [was] devoted to the case as a whole...such a lawsuit

cannot be viewed as a series of discrete claims." Hensley v. Eckerhart, 461 U.S. 424,

435 (1983). These claims were not "distinct in all respects" from the successful

claims. Id. at 440. Therefore, "the district court should focus on the significance of

the overall relief obtained by the plaintiff in relation to the hours reasonably expended

on the litigation." Id. at 435. "[T]he fee award should not be reduced simply because

the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in

-16-

good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Id. In this case, the Court granted the Plaintiff a declaratory judgment that the reduction of her skilled nursing hours from 94 per week to 84 per week was a violation of the Medicaid Act enforceable under 42 U.S.C. § 1983 [Doc. 236]. The Court granted the Plaintiff the substantial relief she requested because she established by a preponderance of the evidence that the 94 private duty nursing hours are medically necessary. The only reason that injunctive relief was denied was that the litigation had dragged on for so long that such relief could not be granted without a current evaluation of her condition and needs. The Court will not reduce the award of attorney's fees for time spent on related arguments and claims.

     d.   Second Motion for Preliminary Injunction

The Plaintiff's counsel claim approximately 56.25 hours related to the preparation of the Second Motion for Preliminary Injunction or Temporary Restraining Order. The purpose of the motion was to keep Callie's nursing hours at 94 hours per week during the litigation. The Defendant claims that he agreed to keep the nursing hours for Callie at 94 per week, yet the Plaintiff insisted on having the injunction hearing regardless [Doc. 36]. The Plaintiff claims that the Defendant never offered to keep the Plaintiff's hours in place while litigation was ongoing until that

representation was made in open court during the hearing on the Second Motion for Preliminary Injunction. (Second Miller Decl. ¶ 13; Pl.'s Reply Br., at 15.) The Defendant has not provided the Court with any factual evidence to support his assertion, so the Court will not deduct time for the motion.

        e.    <u>Fees Related to Depositions</u>

The fees associated with depositions necessarily obtained for use in the case are properly charged to the Defendant. "A deposition taken within the proper bounds of discovery...will normally be deemed to be 'necessarily obtained for use in the case,' and its cost will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged." <u>Fulton Federal Sav. & Loan Ass'n of Atlanta v. American Ins. Co.</u>, 143 F.R.D. 292, 296 (N.D. Ga. 1991). "However, deposition costs incurred merely for the convenience of a party or a party's attorney, for purposes of investigation, or simply to aid in thorough preparation are not taxable." <u>Id.</u> The Court finds that the depositions of Cynthia Price, Agartha Russell, and Mark Trail were necessarily obtained for use in the case. The Court finds the Plaintiff's counsel's defense of these depositions to be persuasive. (Second Miller Decl. ¶¶ 14-16.)

        f.    <u>Motion for Extension of Time to Complete Discovery</u>

The Plaintiff filed a motion for extension of time to complete discovery; the Defendant contends that this motion was unnecessary as the Plaintiff did not conduct any further discovery after obtaining the extension [Doc. 58]. However, the Plaintiff's counsel contends that she received documents under seal as a result of the extended discovery. (Second Miller Decl. ¶ 18.)

>    3.    Adjustment to the Lodestar

Once the lodestar is obtained, the court may then adjust it upwards or downwards. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Blum v. Stenson, 465 U.S. 886, 897 (1984); ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999); Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988). The Supreme Court and Eleventh Circuit have stated that while the adjustment may be based on a number of factors, the most important factor is the results obtained. Hensley, 461 U.S. at 434; Norman, 836 F.2d at 1302.   The Supreme Court has warned, however, that upward adjustments are rarely warranted because the factors on which a prevailing party typically seeks an enhancement already have been considered by the court in determining the reasonable hourly rate:

> Expanding on our earlier finding in Hensley that many of the Johnson factors "are subsumed within the initial calculation" of the lodestar, we specifically held in Blum that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve

as independent bases for increasing the basic fee award.

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565

(1986).

The Plaintiff does not request an upward adjustment to the lodestar, nor does

the Court believe that an upward adjustment would be appropriate.   The results

obtained, as one of the Johnson factors, normally will be subsumed in the calculation

of a reasonable fee and, therefore, usually should not provide an independent basis for

increasing the fee award. Blum v. Stenson, 465 U.S. 886, 900 (1984); accord NAACP

v. City of Evergreen, Ala., 812 F.2d 1332, 1337 (11th Cir. 1987). The Defendant's

arguments for a reduction in the award of attorney's fees, which were rejected, were

properly considered in the above sections determining the lodestar as the product of

the reasonable hourly rate and reasonable hours.   A downward adjustment to the

lodestar is not appropriate.

    C.    Reasonable Expenses

The Plaintiff is entitled to recover all reasonable and necessary expenses.

Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983).  With respect to

expenses, "the standard of reasonableness is to be given a liberal interpretation." Id.;

Loranger v. Stierheim, 3 F.3d 356, 363, vacated on other grounds, 10 F.3d 776 (11th

Cir. 1994).   The Defendant objects to the $114.95 charge for court reporter fees,

-20-

$828.31 charge for copies of deposition exhibits and copies of documents for Department discovery, and $350.00 charge for extra costs associated with subpoenas. The Plaintiff has agreed to eliminate these expenses, and the requested expenses figure of $10,756.81 reflects this reduction. The Defendant also objects to deposition costs associated with such items as the cost of expediting transcripts, word indexes, ASCII disks, condensed manuscripts, and transcript binders. The Court agrees with the Plaintiff that these deposition costs are reasonable, consistent with normal billing practices, and not obviously excessive.

### III. Conclusion

For the reasons set forth above, the Plaintiff's Motion for Attorneys' Fees and Expenses [Doc. 47] is GRANTED in the amount of $592,148.31. The Clerk is directed to enter a supplemental judgment in favor of the Plaintiff against the Defendant in this amount and for post judgment interest at the legal rate from April 20, 2012. See Georgia Ass'n of Retarded Citizens v. McDaniel, 855 F.2d 794, 799 (11th Cir. 1988).

SO ORDERED, this 31 day of October, 2012.


                         /s/Thomas W. Thrash
                         THOMAS W. THRASH, JR.
                         United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARKETRIC HUNTER
a minor child, by and through his
mother and legal guardian, Thelma
Lynah, et al.,

    Plaintiffs,

      v.

DAVID A. COOK
Commissioner of the Georgia
Department of Community Health,

    Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-2930-TWT

**ORDER**

This is an action seeking injunctive relief against the Georgia Department of
Community Health. It is before the Court on the Plaintiffs' Motion for Attorneys' Fees
and Expenses [Doc. 219]. For the reasons set forth below, the motion is GRANTED
in the amount of $851,056.15.

**I. Background**

The Plaintiffs brought this action for injunctive and declaratory relief pursuant
to 42 U.S.C. § 1983 and the Early and Periodic Screening, Diagnostic and Treatment
("EPSDT") provision of the Medicaid Act, 42 U.S.C. §1396d(r), and pursuant to Title

II of the Americans with Disabilities Act (ADA) to redress the Georgia Department of Community Health's ("DCH") practice of using criteria other than medical necessity to deny and reduce medically necessary in-home private duty nursing services to the Plaintiffs through the Georgia Pediatric Program ("GAPP"). DCH's reduction in the amount of medically necessary nursing hours provided to the Plaintiffs put them at significant risk of harm through the deterioration of their health and at significant risk of hospitalization. The Court granted the Plaintiffs M.H. and R.E. injunctive relief and the Plaintiff Zachary Royal declaratory and injunctive relief on their claims. The Plaintiffs S.R. and J.M. accepted offers of judgment from Defendant DCH in August 2013. The lengthy course of litigation is set forth in detail in the Plaintiffs' Brief in Support of Motion for Attorneys' Fees and Expenses [Doc. 223]. This litigation history is not disputed by the Defendant.

## II. Discussion

Prevailing parties in civil rights actions are entitled to an award of attorneys fees.[1] There is no question that the Plaintiffs are the prevailing parties in this case. They obtained all of the main relief that they sought. "Where a plaintiff has obtained

---

[1]     42 U.S.C. § 1988; see also Hensley v. Eckerhart, 461 U.S. 424 (1983). "This statute is interpreted broadly since it is remedial in nature and facilitates private enforcement of civil rights." Webster Greenthumb Co. v. Fulton Cty., 112 F. Supp. 2d 1339, 1346 (N.D. Ga. 2000); Lambert v. Fulton Cty., 151 F. Supp. 2d 1364 (11th Cir. 2000).

excellent results, his attorney should recover a fully compensatory fee."[2] In determining an objective estimate of the value of a lawyer's services, the court must multiply those hours reasonably expended by a reasonable hourly rate, or compute the "lodestar."[3] Moreover, "[t]he Supreme Court has emphasized that the resulting figure is more than a mere rough guess of the final award."[4] Rather, it is "presumed to be the reasonable fee to which counsel is entitled."[5] Where "plaintiff's claims for relief ... involve a common core of facts or [are] based on related legal theories" the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[6] The hours claimed or

---

[2]     Hensley, 461 U.S. at 435; Villano v. City of Boynton Beach, 254 F. 3d 1302, 1308 (11th Cir. 2001) ("If the court determines that the result obtained was an excellent result, then the award of fees 'will encompass all hours reasonably expended on the litigation and indeed in some case of exceptional success an enhanced award may be justified.'"); Association of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1359 (11th Cir. 2006).

[3]     Hensley, 461 U.S. at 433; see also Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). "[T]he lodestar figure represents a presumptively reasonable fee." Military Circle Pet Ctr. v. Cobb County, 734 F. Supp. 502, 504 (N.D. Ga. 1990); Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996).

[4]     Halderman v. Pennhurst State School and Hosp., 725 F. Supp. 861, 863 (E.D. Pa. 1989) (citing Delaware Valley I, 478 U.S. at 564) (internal quotation marks omitted).

[5]     Id. (quoting Blum, 465 U.S. at 897) (internal quotation marks omitted).

[6]     Hensley, 461 U.S. at 434.

spent on a case are "[t]he most useful starting point for determining the amount of a reasonable fee."[7] Counsel must exercise "billing judgment" in determining the hours reasonably expended on the merits, id. at 437, and attorneys should be compensated for the time reasonably expended in seeking an award of fees from the court.[8] In making a fee request, "[c]ounsel ... should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[9] Counsel should provide in the fee request the hours spent "with sufficient particularity."[10]

The Plaintiffs initially sought fees in the amount of $994,018.00 representing 2,391.65 hours multiplied by the hourly rates of the attorneys. After the Defendant objected to the number of hours, the Plaintiffs reduced the hours requested to 2,241.125. The Court concludes that Ms. Miller's hours and Mr. Norris' hours should be reduced by an additional ten percent to account for the claims that were dismissed early in the case. This results in a further reduction of $89,897.50. Beyond that, the Defendant's objections to the hours expended have no merit. Indeed, it was the

_____

[7]    Hensley, 461 U.S. at 433.

[8]    Johnson v. University Coll. of Univ. of Ala. in Birmingham, 706 F.2d 1205, 1207 (11th Cir. 1983); Johnson v. Mississippi, 606 F.2d 635, 638 (5th Cir. 1979).

[9]    Hensley, 461 U.S. at 434; Norman, 836 F.2d at 1301.

[10]   ACLU v. Barnes, 168 F.3d 423 (11th Cir. 1999).

Defendant's intransigence that made the litigation so lengthy and time consuming. "The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."[11] In relation to the enormous amount of the Court's time that was consumed by this case, the reduced hours are perfectly reasonable.

The Defendant's argument that the fee award should be reduced because the Plaintiffs did not obtain excellent results is ludicrous. Throughout the course of the litigation, the Plaintiffs obtained three temporary restraining orders, two preliminary injunctions, three permanent injunctions, and a declaratory judgment. In addition to the permanent injunctive relief and declaratory relief awarded, the Plaintiff M.H. obtained several preliminary orders for relief that required the Defendant to provide him with substantial amounts of nursing care (24-hour nursing, gradually stepped down to 12 hours per day), and enjoined the Defendant from enforcing a policy to limit medically necessary skilled nursing services using criteria not based on medical necessity. Later in the litigation, the Plaintiff M.H. obtained another preliminary order requiring the Defendant to provide him with 24-hour nursing for six to eight weeks while he was in a body cast, and 18 hours per day of nursing after the cast was removed for a delineated period of time. The Plaintiff Royal was also awarded

---

[11]    City of Riverside v. Rivera, 477 U.S. 561, 580 n.11 (1986).

preliminary relief that enjoined the Defendant from reducing his nursing services below 84 hours of skilled nursing per week. Each of these orders ensured that the Plaintiffs were provided medically necessary skilled nursing care to treat their complex conditions, maintain their health, and prevent unnecessary hospitalization or institutionalization.

The number of hours is applied to the reasonable hourly rate to obtain the lodestar. As to reasonable hourly rates, the Plaintiffs supported their fee application with affidavits, including an expert affidavit. The Defendant responded only by pointing to prior applications in which the same attorneys claimed lessor rates. The Defendant misses the point completely. The law is clear that the attorneys for the prevailing parties are entitled to be paid their current hourly rate to compensate for the delay in being paid.[12] The hourly rates are reasonable. This results in an attorneys fee award of $837,847.50.

---

[12]   See Norman v. Housing Auth., 836 F.2d 1292, 1306 (11th Cir. 1988) (directing district court on remand to give "every consideration" to application of current rates "because of the delay experienced by the attorneys in receiving payment"); Johnson v. University Coll. of Univ. of Ala. in Birmingham, 706 F.2d 1205, 1210-11 (11th Cir. 1983); Gates v. Collier, 616 F.2d 1268, 1276 (5th Cir. 1980) (current rates).

## III. Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Attorneys' Fees and Expenses [Doc. 219] is GRANTED in the amount of $837,847.50 in attorneys fees and $13,208.65 in expenses for a total award of $851,056.15.

SO ORDERED, this 18 day of August, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14227
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cv-02930-TWT


M.H., a minor child, by and through his
mother and legal guardian, Thelma
Lynah, et al.,

Plaintiffs-Appellees,

versus

COMMISSIONER OF THE GEORGIA
DEPARTMENT OF COMMUNITY HEALTH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 27, 2016)

Before TJOFLAT, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

This appeal arises out of an award of attorneys' fees under 42 U.S.C. § 1988. Plaintiffs-Appellees are medically fragile children who suffer from serious conditions that, under the Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") provision of the Medicaid Act and Title II of the Americans with Disabilities Act ("ADA"), entitle them to in-home nursing services.[1] The Georgia Department of Community Health ("DCH") offers these services to Plaintiffs and children like them under the Georgia Pediatric Program ("GAPP"). In the underlying suit, Plaintiffs successfully blocked DCH from reducing their hours of nursing care and from evaluating requests for nursing care using criteria other than medical necessity. Plaintiffs sought attorneys' fees for their efforts, and the district court awarded them $837,847.50. Finding no abuse of discretion in the district court's award, we affirm.

## I. BACKGROUND

### A.    Plaintiffs' Relief

The district court's docket for this case lists 234 entries between 2008 and 2015. Those entries include seven hearings and a three-day bench trial. Essentially, Plaintiffs sought to prevent DCH from reducing their hours of nursing

---

[1] Plaintiffs M.H., S.R., J.M., R.E., and Z.R. brought claims in this litigation. Plaintiffs S.R. and J.M. accepted offers of judgment from DCH in 2013, Plaintiff R.E. passed away in 2014, and Plaintiff Z.R. became ineligible to receive EPSDT services when he turned 21 years of age in 2014.

care. Early in the proceedings, the district court determined that "a policy of not providing services where it is medically necessary is inconsistent with the Medicaid Act . . . ." Despite the district court's clear pronouncement on this issue, DCH continued reducing Plaintiffs' hours of care. As a result, Plaintiffs had to move again and again for injunctive relief to preclude DCH from doing so. In total, the district court granted Plaintiffs three temporary restraining orders, two preliminary injunctions, three permanent injunctions, and a declaratory judgment.

The district court issued these injunctions at critical moments for Plaintiffs. For example, one order enjoined DCH to approve 24-hour post-surgical care for six to eight weeks while Plaintiff M.H. was in a body cast. To put the court's relief into perspective, DCH had offered Plaintiff M.H. 24-hour care for a mere three days. Similarly, in 2012, the district court intervened on behalf of Plaintiff Z.R. when DCH tried to cut back on the hours of care he had been receiving for the prior nine years.

**B.     Summary Judgment**

In 2013, the district court ruled on and granted DCH's Motion for Summary Judgment on seven of Plaintiffs' nine remaining claims. The court found, for example, that Plaintiffs had failed to cite any evidence that DCH had violated its duty to inform families of the scope of services available to them under EPSDT. On the other claims—claims largely attacking DCH's procedures for reviewing

3

requests for care—the court similarly determined that Plaintiffs had failed to provide evidence of harm or wrongdoing.  Importantly, though, the court denied summary judgment on Plaintiffs' central, substantive claims under Medicaid and ADA, concluding that a determination of the number of medically necessary nursing hours Plaintiffs required presented a question of material fact.  The district court ultimately resolved these claims in Plaintiffs' favor at a bench trial.  So— critical to this case—the claims decided in DCH's favor did not affect Plaintiffs' ultimate and core relief: safeguarding the children's hours of nursing care from DCH's improper reductions.

**C.    Plaintiffs' Attorneys' Fees**

After Plaintiffs succeeded at the bench trial on their claims under Medicaid and ADA, they moved to recover attorneys' fees under 42 U.S.C. § 1988 (The Civil Rights Attorney's Fees Awards Act of 1976) (the "Act").  The Act allows a plaintiff to recover attorneys' fees if the plaintiff is a "prevailing party" in a suit seeking to privately enforce a plaintiff's civil rights. 42 U.S.C. § 1988 (1976). After the parties submitted briefing, the district court awarded $837,847.50 in attorneys' fees.  That figure accounted for both Plaintiffs' voluntary reduction of hours from 2,391.65 to 2,241.125 and the court's further reduction of those hours by ten percent for claims dismissed early in the suit.

On appeal, DCH does not dispute that Plaintiffs were a prevailing party and thus entitled to attorneys' fees. Instead, DCH disputes how the district court calculated the hourly rate and the reasonable number of hours Plaintiffs' counsel expended on the litigation. DCH argues that Plaintiffs did not obtain excellent results in the litigation and that the district court's order does not allow us to meaningfully review the hourly rates and the number of hours claimed.

## II. STANDARD OF REVIEW

We review a district court's award of attorneys' fees under the abuse-of-discretion standard. Under this standard, the district court enjoys "a range of choice . . . , so long as that choice does not constitute a clear error of judgment." *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989). Still, we "closely scrutinize questions of law decided by the district court in reaching a fee award," *Clark v. Hous. Auth. of City of Alma*, 971 F.2d 723, 728 (11th Cir. 1992), and require that the district court "articulate its rulings in sufficient detail to enable us to accomplish a meaningful review." *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir. 1985).

## III. ANALYSIS

Under 42 U.S.C. § 1988, a prevailing party is entitled to recover attorneys' fees. 42 U.S.C. § 1988 (1976). Designed to incentivize private enforcement of civil-rights laws, this legislation represents a key exception to the American Rule.

5

*See, e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 576, 106 S. Ct. 2686, 2695 (1986). "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *Id.* "Because civil rights litigants are often poor, and judicial remedies are often non-monetary, the Act shifts the costs of litigation from civil rights victim to civil rights violator." *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1189 (11th Cir. 1983). This cost-shifting incentive is highly relevant here, where lengthy and costly litigation—resulting in injunctive relief only—would otherwise leave Plaintiffs' attorneys without proper compensation and discourage attorneys from taking such legitimate cases. *See Rivera*, 447 U.S. at 575-76, 106 S. Ct. at 2695.

## A.    Plaintiffs Were a Prevailing Party

To recover attorneys' fees under 42 U.S.C. § 1988, a plaintiff must be a prevailing party. *See Hensley v. Eckerhart*, 461 U.S. 424, 432, 103 S. Ct. 1933, 1935 (1983). A party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S. Ct. 566, 573 (1992). Usually, an injunction or declaratory judgment meets this standard. *Lefemine v. Wideman*, ___ U.S. ___, 133 S. Ct. 9, 11 (2012).

DCH does not dispute that Plaintiffs were a prevailing party. Because Plaintiffs here obtained substantial relief, we agree. The district court enjoined DCH from reducing Plaintiffs' hours of nursing care and from employing criteria other than medical necessity to review requests for care. Because Plaintiffs directly benefited from this suit, the district court properly found that they were a prevailing party, entitled to recover attorneys' fees under 42 U.S.C. § 1988.

**B.   The District Court Did Not Abuse Its Discretion in Awarding $837,847.50 in Attorneys' Fees**

The lodestar—the product of the reasonable hourly rate and the number of hours billed—is the district court's analytical framework for awarding attorneys' fees. *See Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939. That figure is entitled to a "strong presumption" of validity, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 3098 (1986), but the district court can nonetheless adjust this figure upwards or downwards to account for, among other things, the plaintiff's success in the suit. *See Hensley*, 461 U.S. at 434, 103 S. Ct. at 1940.

*1.    The District Court Did Not Abuse Its Discretion in Determining Plaintiffs' Counsel's Reasonable Hourly Rates*

DCH first contests the district court's conclusion on the reasonableness of Plaintiffs' attorneys' hourly rates. In support of its position, DCH complains that the court offered "no discussion regarding why Plaintiffs' rates are deemed

reasonable . . . ." We disagree. Because the district court based its award on a sufficiently detailed expert affidavit, we find that the court did not abuse its discretion in determining Plaintiffs' attorneys' reasonable hourly rates.

We have defined the reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The district court reviews an expert affidavit on the prevailing market rate for "detail[s]. . . on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id.*

The expert affidavit that Plaintiffs presented in this case provided robust detail. Plaintiffs' expert opined that Plaintiffs' attorneys' rates of $400 and $425 per hour were actually at the low end of the range for similar attorneys doing similar work in the Northern District of Georgia. To support this conclusion, he cited his eight years' experience using national publications to help establish rates for 100 lawyers within his own firm. Plaintiffs' expert also cited Plaintiffs' attorneys' experience litigating under Medicaid regulations, specifically those regulations related to disabled children. He testified not just to the effectiveness of the attorneys' work but also to their efficiency, noting that they "staffed the matter very leanly. . . avoiding duplication of effort." The district court credited this

8

expert affidavit in its fees order, noting that "Plaintiffs supported their fee applications with affidavits, including an expert affidavit."

DCH did not adequately rebut the reasonable rate presented by Plaintiffs' expert in his affidavit. Instead, DCH responded by stating only that Plaintiffs' attorneys had, earlier in their careers, claimed lower rates. This response ignores our governing precedent, which—as the district court explained—allows attorneys to be paid their current hourly rate to compensate for their delay in payment. *See Norman*, 836 F.2d at 1306 (noting that attorneys' current rates "ought to be given every consideration" because of the delay in receiving payment).

The district court did not abuse its discretion by crediting Plaintiffs' expert's unrebutted affidavit in setting the reasonable hourly rates. It also provided a "reasonably specific explanation" in relying on the expert affidavit to enable us to review how the court established the rates awarded. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558, 130 S. Ct. 1662, 1676 (2010).

2.  *The District Court Did Not Abuse Its Discretion in Determining the Number of Hours Plaintiffs' Counsel Reasonably Expended in This Litigation*

DCH next argues that Plaintiffs' attorneys are not entitled to the full number of hours awarded because they did not obtain excellent results and because they lengthened the suit through obstructionist discovery tactics and an unsuccessful motion for class certification. Because the district court enumerated Plaintiffs'

9

excellent results, because Plaintiffs reduced their hours in response to DCH's objections, and because the district court accounted for the early dismissal of some of Plaintiffs' claims, we find that the district court did not abuse its discretion in determining the number of hours reasonably spent on this challenging and time-consuming litigation.

After determining the hourly rate, the district court ascertains "the number of hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939. That determination, rather than being subject to "a precise rule or formula," is context-dependent. *Id.* at 436, 103 S. Ct. at 1941. Civil-rights litigation in particular presents special circumstances because the district court must account not just for the relief obtained on behalf of the individual litigants but also for the relief obtained on behalf of the public at large. *See Villano v. City of Boynton Beach*, 254 F.3d 1302, 1307 (11th Cir. 2001). "[V]indicating a constitutional right against a [public] defendant heightens the public benefit created by a lawsuit." *Id.*

Also, because civil-rights suits sometimes involve common facts and related legal theories, the district court should not reduce a plaintiff's attorney's hours merely because the plaintiff won under some theories and not others. *See id.* at 1307. Simply put, "[w]hether hours were reasonably expended on litigation is a different question than whether hours were necessary to the litigation, the latter

10

standard being the more exacting of the two." *Id.* at 1308. Instead, the district court should focus on the thrust of the "overall relief" obtained by the plaintiff. *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940. But even in cases where a reduction in the number of hours is appropriate, the district court has the discretion to simply make an across-the-board cut. *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("When faced with a massive fee application . . . an hour-by-hour review is both impractical and a waste of judicial resources.").

DCH complains that the district court reduced the number of hours Plaintiffs' attorneys claimed by only ten percent, when, in DCH's view, Plaintiffs failed on nine of eleven claims. DCH asks us to recalculate Plaintiffs' hours or, alternatively, to remand the case to the district court with clear instructions for recalculation. We decline to do so because we find no abuse of discretion.

First, Plaintiffs themselves voluntarily reduced the number of hours for which they sought compensation from 2,391.65 to 2,241.125. That reduction cut time expended on claims regarding transportation and notice, which were claims unrelated to the substantive relief that Plaintiffs eventually obtained; time expended on claims regarding a party that was ultimately dismissed; and time expended responding to DCH's motions to compel discovery. Nor—as DCH overlooks in its briefing—did Plaintiffs bill for any time spent on class certification.

11

Second, as we have explained, the number of claims dismissed at summary judgment is not determinative of the proper award of attorneys' fees. *See Hensley* at 435, 103 S. Ct. at 1940 (discouraging any view that treats complex litigation as "a series of discrete claims"). Instead, "the most critical factor is the degree of success obtained." *Id.* at 436, 103 S. Ct. at 1941. The district court addressed Plaintiffs' success when it concluded that Plaintiffs obtained "all of the main relief that they sought." To support its conclusion, the court cited its three temporary restraining orders, two preliminary injunctions, three permanent injunctions, and declaratory judgment—all issued in Plaintiffs' favor.

The district court also emphasized that Plaintiffs "obtained substantial amounts of nursing care . . . and enjoined . . . [DCH] from enforcing a policy to limit medically necessary skilled nursing services using criteria not based on medical necessity." Significantly, the court relied on the public benefit that Plaintiffs' success bestowed: As a result of the litigation, children statewide benefited from the state's change in policy under GAPP. *See, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686, 2694 (1986) (noting that "a successful civil rights plaintiff often secures important social benefits . . . .").

Despite Plaintiffs' success, the district court itself accounted for DCH's defeat of certain claims by reducing the number of hours by ten percent for two

claims dismissed early in the suit.  On this record, we find no abuse of discretion in the awarding of $837,847.50 to Plaintiffs' attorneys.

DCH argues in the alternative that, even if Plaintiffs did obtain substantial relief, they should not be permitted to profit from successes derived from the district court's earlier, incorrect interpretation of the Medicaid Act.  That is, DCH argues that Plaintiffs should not receive fees for any work resulting from the district court's earlier orders that interpreted the Medicaid Act in a way inconsistent with this Court's later decision in *Moore*.

In 2010, at both parties' request, the district court stayed discovery pending the outcome of this Court's decision in *Moore v. Reese*, 637 F.3d 1220 (11th Cir. 2011), which ruled on the scope of DCH's ability to review claims under the Medicaid Act.  As *Moore* later revealed, the district court incorrectly interpreted the Medicaid Act to mean that the state's sole role under GAPP was to screen providers' requests for fraud or abuse. *See Moore*, 637 F.3d at 1259-60.

But DCH cites nothing in the record to suggest that the district court would have otherwise reached a different outcome in the challenged orders.  To the contrary, though the district judge may have incorrectly stated the law, the court's real concern was that DCH made decisions by ignoring physicians' advice entirely and by advancing a policy agenda unrelated to medical necessity—the very same issues on which Plaintiffs ultimately secured relief.  Under these circumstances, we

13

find no reason why our decision in *Moore* affects the district court's award of attorneys' fees in this case.

## IV. CONCLUSION

This litigation has now stretched on for a period of almost eight years. The district court, which has the "superior understanding of the litigation," *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941, because it presided over it, did not abuse its discretion in awarding Plaintiffs $837,847.50 in attorneys' fees under 42 U.S.C. § 1988. We therefore affirm the district court's order.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 27, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-14227-EE
Case Style: M.H., et al v. Commissioner of the Georgia De
District Court Docket No: 1:08-cv-02930-TWT

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF")
system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal.
Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in
accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for
rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings,
a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time
specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a
motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list
of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-
1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition
for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time
spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a
petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature
block below. For all other questions, please call Sandra Brasselmon, EE at (404) 335-6181.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs